UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRIAN C. DUBRIN,            )   Case No. CV 10-1032 CJC(JC)
               Petitioner,   )
                       )   REPORT AND RECOMMENDATION
      v.                   )   OF UNITED STATES MAGISTRATE
                       )   JUDGE
DAVE DAVEY,            )
                       )
               Respondent.   )
_____ )

      This Report and Recommendation is submitted to the Honorable Cormac J. Carney, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.    SUMMARY**

      This matter is before the Court following remand from the Ninth Circuit in Dubrin v. People of the State of California, 720 F.3d 1095 (9th Cir. 2013). Petitioner is currently serving a sentence of 26 years to life under California's three-strikes law (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)).

      On February 11, 2010, petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("2010 Case" or "2010 Petition") and an attached

Memorandum ("2010 Petition Memo"), challenging a conviction from 2000 ("2000 Conviction" or "2000 State Case"). Petitioner alleges that his 2000 Conviction resulted from an assertedly improper *nolo contendere* plea induced by a representation that the conviction did not constitute a strike under California's three-strikes law. Contrary to the alleged representations made at the time he entered his plea in the 2000 State Case, the 2000 Conviction was deemed a strike and was used to enhance his sentence on a 2008 conviction ("2008 Conviction" or "2008 State Case"). Petitioner contends that his plea in the 2000 State Case was not voluntary and intelligent, that it was rendered unconstitutional by the misadvisement that petitioner's 2000 Conviction would not qualify as a strike made by the court, the prosecutor, and petitioner's counsel (who allegedly was ineffective), and that the State breached the plea agreement by using the 2000 Conviction as a strike to enhance his sentence in the 2008 State Case.

On June 2, 2010, this Court issued a Report and Recommendation finding that the 2010 Petition should be denied and the action should be dismissed for lack of subject matter jurisdiction in light of Lackawanna County Dist. Attorney v. Coss ("Lackawanna"), 532 U.S. 394, 403-05 (2001) (generally a habeas petitioner may not challenge an enhanced sentence under 28 U.S.C. § 2254 on the ground that the prior conviction was unconstitutionally obtained; suggesting that a petitioner may challenge an expired prior conviction used to enhance a current sentence where, *inter alia*, the petitioner cannot be faulted for failing to obtain a timely review of the constitutional claim because a state court, without justification, refused to rule on a properly presented constitutional claim). (Docket No. 15). The Court found no indication in the record that a state court ever unjustifiably refused to rule on a properly presented challenge to the 2000 Conviction. (Docket Nos. 15, 17). Petitioner appealed.

On September 17, 2012, while the appeal in the 2010 Case was pending, petitioner filed a Petition for Writ of Habeas Corpus in Case No. EDCV 12-1578

("2012 Case" or "2012 Petition") and attached memorandum ("2012 Petition Memo"), challenging petitioner's 2008 Conviction on the grounds that: (1) the trial court's admission of gang evidence violated petitioner's constitutional rights; (2) petitioner's trial counsel was ineffective in failing to object to the extent of the gang evidence admitted; and (3) petitioner's appellate counsel was ineffective in failing to challenge the trial court's allegedly unconstitutional admission of gang evidence on direct appeal. (2012 Petition at 5-6).[1] On October 30, 2013, respondent filed an Answer and a separate memorandum ("2012 Answer Memo"), arguing that the claims in the 2012 Petition should be rejected as untimely or, alternatively, as raising claims that are procedurally defaulted and that otherwise fail on the merits. On January 2, 2014, petitioner filed a Reply.

Meanwhile, on June 20, 2013, the Ninth Circuit issued its opinion on the appeal of the 2010 Case. The Ninth Circuit deemed the 2010 Petition a challenge to petitioner's 2008 sentence as enhanced by the allegedly invalid 2000 Conviction, and found that petitioner did not receive a full and fair opportunity to obtain state court review of his constitutional challenge to the 2000 Conviction. Dubrin, 720 F.3d at 1099. The Ninth Circuit explained:

> In 2000, Dubrin pleaded no contest to making criminal threats in violation of California Penal Code § 422. Before Dubrin entered his plea, his lawyer asked the prosecutor to confirm that this conviction would not count as a "strike" under California's three-strikes law. Some uncertainty surrounded the question because, at the time Dubrin committed the offense, making criminal threats did not

---

[1]Petitioner also frames two additional grounds for relief which are not actually claims and simply argue that the California Supreme Court's denial of his habeas petition raising the other grounds for relief as untimely does not bar federal habeas review and that he should be entitled to equitable tolling. (2012 Petition at 6). Because the Court addresses the merits of the three substantive grounds for relief, the Court need not and does not comment further on these other two "claims."

qualify as a strike.  The day before Dubrin's change-of-plea hearing, however, California voters had approved Proposition 21, an initiative statute that designated additional crimes as strikes.  Whether Dubrin's threats conviction would count as a strike was an important consideration for him, as he had already suffered one strike for an assault conviction in 1997.

At Dubrin's change-of-plea hearing, the prosecutor stated that he had "checked with [his] appellate department" and confirmed that Dubrin's criminal threats conviction would *not* count as a strike. Summing up the parties' mutual understanding, the prosecutor stated, "so we're going under the assumption in this plea that this 422 itself is not a strike."  The judge who accepted Dubrin's plea agreed:  "That would have been my reading of the initiative, that it's not [applicable]."  Even if it were applicable, the judge noted, there would likely be "issues of retroactivity" anyway.

As it turned out, both the prosecutor and the judge were wrong. Proposition 21 added § 422 to the list of crimes that count as strikes, and there were no "issues of retroactivity" in applying Proposition 21 to Dubrin.  [Citations].  In 2004 and 2005, after learning that his 2000 conviction would count as a strike, Dubrin filed pro se habeas petitions in the state trial court, the California Court of Appeal, and the California Supreme Court.  The appellate courts summarily denied relief, without reaching the merits of Dubrin's claims, on the ground that he was not "in custody," a prerequisite for obtaining habeas review.  [Citation].

The state appellate courts, too, were wrong.  By 2005, Dubrin had been released from prison, but he was still on parole for his criminal threats conviction and remained so until 2007.  Thus, for

4

purposes of obtaining habeas relief, he remained "in custody" and his

claims should not have been rejected on this threshold ground.

[Citations].  As a pro se litigant who was no longer incarcerated,

Dubrin understandably assumed the state appellate courts were right

when they told him he was not "in custody."  And, having been

advised by the state courts that he was no longer eligible for habeas

relief, Dubrin did not pursue habeas relief in federal court.

Dubrin, 720 F.3d at 1096-97 (emphasis original; internal citations omitted).

Under these circumstances, petitioner could not be faulted for failing to obtain

timely review of his challenge to the 2000 Conviction, and petitioner should be

permitted to challenge his enhanced sentence under Section 2254 on the ground

that the 2000 Conviction was unconstitutionally obtained.  Id. at 1098-99.  The

Ninth Circuit remanded for this Court to review petitioner's challenge to the

constitutional validity of his 2000 Conviction as an exception to Lackawanna.

On June 9, 2014, following the Ninth Circuit's mandate and with the

parties' consent, the Court consolidated the 2012 Case into the 2010 Case and

ordered the 2012 Case administratively closed.  All filings and proceedings

pertaining to the 2010 and 2012 Cases have since taken place in the 2010 Case.

On September 30, 2014, respondent filed a Supplemental Answer to the

2010 Petition ("Supp. Answer.").  On March 3, 2015, petitioner filed a

Supplemental Reply ("Supp. Reply.") with exhibits ("Supp. Reply Ex.").  On

October 5, 2016, petitioner filed a Status Report advising the Court that his

Motion for Resentencing under Proposition 36 (amending California's three-

strikes law under Cal. Penal Code § 1170.126) was denied by the San Bernardino

County Superior Court on September 26, 2016.

On November 3, 2016, the Court ordered the parties to submit declarations

and any relevant contemporaneous notes from counsel in the 2000 State Case (i.e.,

Deputy District Attorney Joseph Esposito and Deputy Public Defender Ruben

Garcia), to aid the Court in evaluating petitioner's claim that his 2000 plea was involuntary, and in anticipation of a possible evidentiary hearing. On November 17, 2016, the parties filed a Joint Stipulation attaching as exhibits declarations from Joseph Esposito ("Esposito Decl.") and petitioner's current Deputy Federal Public Defender Emily J.M. Groendyke, and Garcia's notes ("Garcia's Notes"). On November 17, 2016, the Court ordered the parties to confer and file a joint status report regarding issues for an evidentiary hearing. On November 23, 2016, the parties filed a Status Report as requested.

On January 18, 2017, the Court held an evidentiary hearing wherein petitioner and Garcia testified and Garcia's Notes (among other exhibits) were admitted in evidence. (Docket No. 95 (evidentiary hearing transcript ("EHT"))). On March 6, 2017, petitioner filed a post-hearing brief ("Petitioner's Post-Hearing Brief"). On April 5, 2017, respondent filed a post-hearing brief ("Respondent's Post-Hearing Brief"). On May 10, 2017, petitioner filed a reply ("Petitioner's Post-Hearing Reply"). On July 19, 2017, petitioner filed Petitioner's Notice of Supplemental Authority regarding a recent Supreme Court decision, <u>Lee v. United States</u>, 137 S. Ct. 1958 (2017), regarding alleged ineffective assistance of counsel during plea proceedings.

The matter is now fully briefed and ready for decision.[2]  For the reasons stated below:  (1) 2012 Petition should be denied; and (2) the 2010 Petition should be granted in part, and the matter remanded for resentencing in the 2008 State Case.

///

///

---

[2]The parties rely on multiple documents lodged in the 2010 Case on April 13, 2010 and September 30, 2014, and in the 2012 Case on November 19, 2012 and October 30, 2013 ("Lodged Docs."), including the Reporter's Transcript ("RT") and the Clerk's Transcript ("CT") from the 2008 State Case.

## II.  PROCEDURAL HISTORY

### A.  The 2000 Conviction Used as a Strike to Enhance the Sentence in the 2008 State Case

On March 8, 2000, in Los Angeles Superior Court ("LASC") Case No. KA-046040 (the 2000 State Case), petitioner pleaded no contest to one count of making terrorist threats (Cal. Penal Code § 422), admitted a hate crime enhancement (Cal. Penal Code § 422.75(a)), and admitted that he had suffered a prior conviction in 1997 for assault which qualified as a strike. (CT 449-81 (records from the 2000 State Case including plea transcript)). In entering the plea, petitioner acknowledged that he had been promised nothing other than the sentence to be imposed. (CT 451, 462). The court sentenced petitioner to 44 months in state prison. (CT 452-53, 467).[3]

At the conclusion of the plea/sentencing hearing, after petitioner's plea and admissions had been made and accepted, and after the trial court had imposed sentence, the prosecutor noted the following on the record:

> [Prosecutor]: Excuse me, Your Honor. There is one more thing.
> [Defense counsel] had inquired of me as to whether or not the
> enactment of Proposition 21 affected the current strike law by making
> a – 422 a strikable offense. I checked with my appellate department.
> I also looked at the proposition itself. It appears [it] has nothing to do
> with Proposition 21, so we're going under the assumption in this plea
> that this 422 itself is not a strike.
> [The Court]: That would have been my reading of the initiative, that
> it's not. But it – if it is, then there's – we don't have to go into – any
> further because there have to be issues of retroactivity. ¶ So in the

---

[3]The trial court advised petitioner of his Boykin/Tahl rights, Boykin v. Alabama 395 U.S. 238 (1969) and In re Tahl, 1 Cal. 3d 122 (1969), and accepted petitioner's waivers of his rights then sentenced petitioner accordingly. (CT 450-51, 462-67).

meantime it appears not to be a strike for purposes of any future – of any time in the future in the system, criminal system.

(CT 467-68).[4]

## B. State Habeas Petitions Following the 2000 Conviction

On December 2, 2004, petitioner filed a habeas petition in the LASC ("First State Petition") challenging the validity of the plea resulting in the 2000 Conviction. (Supp. Reply Ex. A). Petitioner alleged under penalty of perjury that he was misled and misinformed about the strike consequences of pleading guilty to the terrorist threats charge, and that defense counsel was ineffective for allegedly misinforming petitioner that the offense was not a "strikable offense." (Id. at 3-4, 6). Petitioner further alleged that he only accepted the plea offer because his attorney advised him that the offense was not a strikable offense. (Id. at 4). Petitioner explained that he was not made aware that the 2000 Conviction could be used as a strike until around the time he filed the petition, when the 2000 Conviction was charged as a strike prior in another case (San Bernardino County Superior Court ("SBSC") Case No. FCH06087). (Id. at 4-6). It appears that petitioner filed no exhibits with the First State Petition. See id. On the same day petitioner filed the First State Petition, the LASC denied it, finding: (1) the count

///
///
///

---

[4]Proposition 21, the Gang Violence and Juvenile Crime Prevention Initiative of 1998, was a lengthy ballot initiative addressing gang-related crimes, sentencing of repeat offenders, California's three-strikes law, and the juvenile justice system. See Manduley v. Superior Court, 27 Cal. 4th 537, 573-79 (2002) (discussing same); see also 2000 Cal. Legis. Serv. Prop. 21 (WEST) (text of Proposition 21). As noted above, voters approved Proposition 21 the day before petitioner pleaded no contest in the 2000 State Case. Proposition 21 expanded the list of strike offenses to include "terrorist threats, in violation [of Cal. Penal Code] Section 422." See 2000 Cal. Legis. Serv. Prop. 21, § 17 (adding terrorist threats (now termed "criminal threats") to the list of "serious felonies" at subparagraph 38 of Cal. Penal Code § 1192.7(c)).

charged was not a strike at the time of the plea but became a strike later;[5] and (2) there were "no facts to support the issue raised." (Attachment to Lodged Doc. A3 (copy of LASC minutes)).

On April 1, 2005, petitioner filed a habeas petition in the California Court of Appeal ("Second State Petition") challenging the validity of his 2000 Conviction. (Lodged Doc. A3). Petitioner alleged that part of his plea agreement was a promise that his 2000 Conviction was not a strikable offense (a breach of contract claim), and that he was misled or misadvised by the prosecution and the trial court that the 2000 Conviction would not be a strike (a claim that his plea was not knowing and voluntary). (Id. at 3). Petitioner also alleged that defense counsel was ineffective for misinforming petitioner that the offense was not a strikable offense, allegedly promising petitioner that the 2000 Conviction could never be used as a strike against petitioner. (Id. at 4). Petitioner included a transcript of the 2000 plea proceedings, the Abstract of Judgment from the 2000 State Case, and the LASC decision denying the First State Petition. Petitioner sought to withdraw his plea. (Id. at 3-4). On May 11, 2005, the Court of Appeal denied the Second State Petition, finding that petitioner had no standing to seek habeas relief because he was not in actual or constructive custody in connection with the 2000 Conviction. (Lodged Doc. A2).[6]

On November 21, 2005, petitioner filed a habeas petition in the California Supreme Court ("Third State Petition") raising the misadvisement and ineffective assistance of counsel claims that he had raised in the Second State Petition, but he

_____

[5]To the extent the LASC found that the charge did not qualify as a strike at the time of the plea, such finding was erroneous. As the Ninth Circuit explained and as explained herein, Proposition 21 became effective and made petitioner's criminal threats conviction qualify as a strike on the day petitioner entered his plea. See Dubrin, 720 F.3d at 1096.

[6]On June 10, 2005, petitioner pleaded guilty to the charges in SBSC Case No. FCH06087, after the prosecutor offered to strike the 2000 Conviction strike prior allegation. (Lodged Doc. E2 at 5; CT 507 (Abstract of Judgment in SBSC Case No. FCH06087)).

9

did not frame a separate breach of contract claim.  (Lodged Doc. B2).[7]  Petitioner alleged under penalty of perjury that he would not have accepted any plea offer in the 2000 State Case if his 2000 Conviction could be considered a strikable offense.  (Attachment to Lodged Doc. B2 at 1, 4).  On December 14, 2005, the California Supreme Court denied the petition citing In re Wessley W., 125 Cal. App. 3d 240, 246 (1981) (writ of habeas corpus available to persons in actual or constructive custody), suggesting that the denial was based on the premise that petitioner was not then in custody on the 2000 State Case.  (Lodged Doc. B3).[8]

### C.    The 2008 Conviction

On May 1, 2008, petitioner was convicted by a jury in SBSC Case No. FCH07697 (2008 State Case) of custodial possession of a weapon, assault by means likely to produce great bodily injury, and threatening an executive officer. (CT 384-86; RT 810-13).  On May 30, 2008, the court sentenced petitioner to state prison as a third-strike offender to 26 years to life ("2008 Sentence").  (CT 429-32; RT 839-42).  Petitioner's 2000 Conviction constituted one of the predicate strikes.  (CT 110-12; Lodged Doc. 8 at 2, 8-9).

Petitioner had filed a Romero motion,[9] requesting that the trial court in the 2008 State Case strike the 2000 Conviction as a strike prior, alleging that, at the time he had pleaded no contest to the Section 422 charge, "it was the intention of

---

[7]As discussed later, the Court has concluded nonetheless that petitioner fairly presented a breach of contract claim in the Third State Petition.

[8]As noted above, the Ninth Circuit found that the California Court of Appeal and the California Supreme Court erred when they found that petitioner was not in custody at the time he sought review of the 2000 Conviction since he was on parole in the 2000 State Case until 2007. Dubrin, 720 F.3d at 1096-97.  Petitioner was discharged from parole in the 2000 State Case on March 5, 2007.  (Lodged Docs. H1, I1).

[9]People v. Superior Court (Romero), 13 Cal. 4th 497 (1996) (upon the motion of a defendant, a trial court may exercise discretion to strike or vacate a prior strike allegation or finding within the meaning of California's three-strikes law).

the People and the Court that [the 2000 Conviction] was not intended to be a strike nor be used as a strike in the future." (CT 404). The trial court denied the motion, advising petitioner that he should challenge the validity of the prior conviction with the LASC and, if the LASC found the 2000 Conviction was in error, petitioner could return for resentencing. (RT 838).

On November 17, 2009, the California Court of Appeal issued a reasoned decision affirming the judgment on direct appeal, and rejecting petitioner's claim that the trial court erred in denying petitioner's <u>Romero</u> motion. (Lodged Doc. 8 at 8-13). The Court of Appeal observed that petitioner "was informed that the prosecutor did not intend for the criminal threats conviction to constitute a strike." (Lodged Doc. 8 at 11). It reasoned, however, that there was no cause for the trial court to invalidate the plea because petitioner had not established that his plea was *induced* by the promise the 2000 Conviction would not be a strike, *i.e.,* petitioner had not offered any evidence to suggest he would not have entered his plea had he been properly advised. (Lodged Doc. 8 at 11-12; <u>see also</u> Lodged Doc. 6 at 22-24 (petitioner arguing that his <u>Romero</u> motion should have been granted because he was affirmatively misadvised in entering his 2000 plea)).[10]

On February 3, 2010, the California Supreme Court denied review without comment. (Lodged Doc. 11; <u>see also</u> Lodged Doc. 9 at 7-11 (asserting same <u>Romero</u> argument raised with the Court of Appeal)).

### D. The State Habeas Petitions Following the 2008 Conviction

Following petitioner's 2008 Conviction, at the SBSC's suggestion (RT 838), petitioner filed another round of habeas petitions starting in the LASC

---

[10]Petitioner did not mention to either the trial court in the 2008 State Case or to the Court of Appeal on direct appeal of the 2008 Conviction, that by the time he argued his <u>Romero</u> motion in the 2008 State Case, the LASC, Division Eight of the Second Appellate District of the California Court of Appeal, and the California Supreme Court had already denied the First, Second and Third State Petitions challenging the constitutionality of the 2000 Conviction. (RT 823-24, 836; CT 404; Lodged Doc. 6 at 17-24).

challenging the validity of his 2000 Conviction as used to enhance his 2008 Sentence.[11] On June 5, 2008, petitioner filed a habeas petition in the LASC ("Fourth State Petition"). (Supp. Reply Ex. B (raising petitioner's claim that he was misadvised about the consequences of his plea and his ineffective assistance of counsel claim he raised in his first round of state habeas petitions, but not a breach of contract claim)). On the same day the Fourth State Petition was filed, the LASC denied it, not finding "any facts to support the issue raised," only "opinions and conclusions." (Supp. Reply Ex. B (containing partial copy of LASC's form denial); Lodged Doc. E2, Ex. G (copy of LASC minutes)).

On August 10, 2008, petitioner filed a habeas petition in the California Court of Appeal ("Fifth State Petition"), raising the same claims he raised in the Fourth State Petition. (Lodged Doc. C3). On September 11, 2008, the Court of Appeal summarily denied the Fifth State Petition without comment. (Lodged Doc. C2).

On January 7, 2009, petitioner filed a habeas petition in the California Supreme Court ("Sixth State Petition"), asserting the same claims he raised in the Fifth State Petition. (Lodged Doc. E2). The California Supreme Court ordered informal responses which were filed. (Lodged Docs. E1, E3-E6s). On December 23, 2009, the California Supreme Court denied the Sixth State Petition without comment. (Lodged Doc. E7).

///
///
///
///
///

---

[11]Petitioner also filed numerous other unsuccessful petitions with the California courts challenging his 2008 Conviction (as opposed to his 2008 Sentence). (Lodged Docs. 12-13, 16-21, 24-27). The petitions pertinent to the 2012 Petition are discussed below.

## III.  FACTS[12]

The charges against petitioner resulting in the 2008 Conviction arose from three separate incidents that occurred on September 28, 2005, November 17, 2006, and November 29, 2006.  Petitioner was acquitted of the charge corresponding to the September 28, 2005 incident (count one).  The facts regarding the other two incidents corresponding to the charges on which he was convicted (counts two, three and four) are as follows.

### A.    November 17, 2006 Incident – Count Two

On November 17, 2006, petitioner was housed at West Valley Detention Center.  On that date, a sheriff's deputy conducted a random cell search of petitioner's cell.  The deputy found a ratchet portion piece of a leg shackle inside the toilet bowl in petitioner's cell.  The leg shackle had been straightened and bent out to a point.  It was the deputy's opinion that the item was a modified weapon, usable as a shank to pierce or stab, jab or slice someone's neck.

Petitioner admitted that because his leg shackles were too tight and the deputies would not loosen them, he broke the shackles off his legs using the lip of the bunk and the lip of the sink.  To avoid being charged for the damaged property or disciplined, he needed to get rid of the shackles.  To this end, he bent them back and forth til they broke into pieces and then flushed the pieces down the toilet.  Thirty minutes after he flushed the last piece down the toilet, a deputy searched his cell and found the one piece still in the toilet.

///

---

[12]The Court has independently reviewed the entire state court record for the 2008 State Case.  See Nasby v. McDaniel, 853 F.3d 1049 (9th Cir. 2017) (essentially holding that federal habeas court is required to review independently state court record where relief sought on basis of record before state court).  The facts set forth in this section are drawn from the California Court of Appeal's decision on direct appeal of the 2008 Conviction, and are consistent with the record.  See People v. Dubrin, 2009 WL 3824855, at *1-2 (Cal. Ct. App. Nov. 17, 2009); see also Lodged Doc. 8 at 2-5.

## B.    November 29, 2006 Incident – Counts Three and Four

On November 29, 2006, petitioner got into a fight with an African-American inmate in a holding cell at the Chino courthouse. A sheriff's deputy, who worked as a custody officer for the Chino courts, heard shuffling sounds coming from a cell and looked in the window. He saw petitioner (who is a member of a prison white supremacist gang) fighting with an African-American inmate in the back of the cell. Both inmates had waist and ankle chains on, with their right hands chained to the waist so that their left hands were free. The deputies removed the other inmates who were not involved in the fight from the cell.

The deputy yelled at the two fighting inmates to stop; the inmate petitioner was fighting stopped and turned to face the wall in compliance with the directive, but petitioner continued to strike him with a closed fist. The deputy used his taser to immobilize petitioner, but petitioner continued to resist. The deputy had to use the taser to "drive stun" petitioner, and this finally subdued petitioner. Petitioner was then handcuffed and removed from the cell. As he was being handcuffed, petitioner threatened to "get" the deputy several times, and informed the deputy he (petitioner) would have retribution. When placed in another cell, petitioner complained of chest pains and was transferred to the hospital. Prior to leaving for the hospital, petitioner winked and smiled at the deputy.

Petitioner testified he did not hear the deputy tell them to stop fighting, although he saw an officer standing outside the cell. He kept fighting, but put his head down because he thought the deputy was going to mace them for fighting. He heard a loud pop and someone told him to stop resisting; then he was tasered on his left arm and back, between the armpit and waist. The deputy told petitioner not to fight in the courthouse and to stop when told, tasing petitioner again, and beating petitioner on the side of the face, front of the face, and back of the head.

///

14

The deputy also tasered him on the back, which felt like it went straight through to his heart.

After the tasing stopped, petitioner was dragged into the hallway where he was cuffed and escorted to another holding cell. He denied threatening the deputy; he also denied telling the deputy he would have his retribution, claiming he did not know the meaning of the word. He did admit telling the deputy there would be repercussions.

## IV.    STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[13]

In applying the foregoing standards, federal courts look to the last reasoned state court decision and evaluate it based upon an independent review of the record. Nasby v. McDaniel, 853 F.3d 1049 (9th Cir. 2017); Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert. denied, 133 S. Ct. 1831 (2013). When it is

_____

[13]When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 568 U.S. 289, 297-302 (2013) (extending Richter presumption to situations in which state court opinion addresses some, but not all of defendant's claims).

clear that the state court has not decided an issue on the merits, or when a state court's adjudication of a claim on the merits results in a decision contrary to or involving an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts, review is also *de novo*. See Cone v. Bell, 556 U.S. 449, 472 (2009); Panetti v. Quarterman, 551 U.S. 930, 953 (2007); Hurles v. Ryan, 752 F.3d 768, 778 (9th Cir.), cert. denied, 135 S. Ct. 710 (2014).

## V.  DISCUSSION

Petitioner challenges his 2008 Conviction (2012 Petition) and his 2008 Sentence as enhanced by his 2000 Conviction (2010 Petition).  As discussed below, petitioner is not entitled to federal habeas relief on his challenges to the 2008 Conviction, but is entitled to federal habeas relief on one of his challenges to the 2008 Sentence as enhanced by his 2000 Conviction.

### A.  Petitioner Is Not Entitled to Federal Habeas Relief on His Challenges to the 2008 Conviction (2012 Petition)

Petitioner alleges that the trial court violated his constitutional rights by admitting gang evidence, and that his trial counsel was ineffective for failing to "object to the extent of the admitted gang evidence." (2012 Petition, Grounds One and Two).  Petitioner also alleges that this appellate counsel was ineffective for failing to raise Ground One on direct appeal. (2012 Petition, Ground Three). See supra note 1.  None of these claims merits relief.

As noted above, respondent contends that these claims are time-barred, procedurally defaulted, and without merit. (2012 Answer Memo).  The California Supreme Court denied successive petitions containing claims similar to Grounds One through Three, citing In re Clark, 5 Cal. 4th 750, 767-69 (1993) (indicating the petition was untimely), and In re Miller, 17 Cal. 2d 734, 735 (1941) (denying petition for the same reason it denied a prior petition). (Lodged Docs. 12, 19-21). For ease of analysis, the Court has reviewed these claims *de novo* and has reached

the merits of Grounds One through Three assuming, *arguendo,* the claims are timely and have not been procedurally defaulted.  See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (in the interest of judicial economy, federal courts may address merits of defaulted habeas claim if issues on claim's merits is clear but the procedural default issues are not); Flournoy v. Small, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration on the merits on habeas review, we are not required to do so when a petition clearly fails on the merits.") (citation omitted), cert. denied, 133 S. Ct. 880 (2013); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004) (*de novo* standard of review applies where state court declined to decide federal constitutional issue on the merits); Van Buskirk v. Baldwin, 265 F.3d 1080, 1083 (9th Cir. 2001) (court may properly deny petition on merits rather than reaching complex questions lurking in time bar of federal habeas statute), cert. denied, 535 U.S. 950 (2002).

## 1. Background

Prior to the start of trial, the prosecution filed a brief requesting that the trial court permit the introduction of evidence of petitioner's alleged gang membership and affiliation to show motive and intent.  The prosecution argued that petitioner was a member of a white supremacist gang and that his alleged attacks on other inmates were racially motivated.  (CT 258-77).  Petitioner's counsel opposed the introduction of gang evidence, arguing that gang evidence was not relevant to the charges, none of the charges involved a gang enhancement, and that any probative value from the admission of such evidence would be far outweighed by the potential for undue prejudice.  (CT 293-97).  After hearing argument, the trial court found the gang evidence admissible as relevant to prove petitioner's motive in assaulting the two inmates involved in the September 28, 2005 and November 29, 2006 incidents.  The court found the evidence more probative than prejudicial.  (RT 124-26).

At trial, the prosecution presented Deputy Joseph Steers as a gang expert who testified about the specific gangs in prison including the "Peni" gang (Public Enemy Number One), which is a white prison gang. (RT 487-94). Steers also testified about the "structure" of the Peni gang and how members "put in work" to advance in the gang (including by assaulting African-American inmates). (RT 497-98). Steers knew petitioner from having contact with petitioner at the West Valley Detention Center and said that petitioner had "self-admitted" during a classification interview that petitioner was a member of the Peni gang with a moniker of "Vamps." (RT 499-501, 505, 555). Steers also testified about petitioner's numerous tattoos which included swastikas on the side of petitioner's neck, on his chest, and on his left arm, an iron cross on his forearm, and other symbols for white power. (RT 501-04). Steers opined that petitioner was an active member of the Peni gang and that petitioner's assaults were "motivated" by petitioner's gang membership. (RT 507-09, 514-20). Steers admitted that he had no personal knowledge whether petitioner's actions led to any change in petitioner's alleged status or reputation in the Peni gang, or that any of the alleged events had been communicated to any Peni gang members. (RT 551-52, 557-58).[14]

The jury asked a few questions during deliberations and requested readback of certain testimony. None of the questions or requests concerned Deputy Steers' testimony. (RT 799-809; CT 317, 321-23). The jury ultimately acquitted petitioner of the September 28, 2005 assault (count one), which was an alleged

///

[14]Petitioner testified in his defense that he got all of his tattoos for his own safety around 1993 or 1994 when he was sent to the California Youth Authority. Petitioner explained that there is pressure to get the kind of tattoos he had if you are white to let everyone know that he was "with this group of people" and would fight back if anyone messed with him. (RT 590-91). Petitioner denied that he was ever a part of the Peni gang, and stated that he does not like to get involved with Peni members. (RT 592).

assault on an African-American inmate, but found him guilty of the remaining charges.  (RT 508, 810-11; CT 383-86).

>    **2.    The Trial Court's Admission of Gang Evidence Did Not Violate Petitioner's Constitutional Rights (Ground One)**

Petitioner alleges that the trial court's admission of the gang evidence was erroneous because the evidence assertedly was not relevant to motive and intent, was overly prejudicial, and violated due process.  (2012 Petition Memo at 6-12). To the extent petitioner contends that the trial court erred under California law in admitting the evidence, his claim is not cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (correctness of state evidentiary rulings presenting only issues of state law not cognizable on federal habeas review) (citations omitted); Perry v. New Hampshire, 565 U.S. 228, 237 (2012) ("Apart from [federal Constitutional] guarantees, . . . state and federal statutes and rules ordinarily govern the admissibility of evidence . . . .") (citation omitted); Smith v. Phillips, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution.").

To the extent petitioner argues that the admission of the gang evidence violated due process, he has not shown a constitutional violation.  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision."  Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), as amended on reh'g, 421 F.3d 1154 (9th Cir. 2005).  "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process."  Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir.) (citation omitted), cert denied, 516 U.S. 1017 (1995).  The "[a]dmission of evidence violates due process '[o]nly if there are *no* permissible inferences the jury may draw' from it."  Boyde, 404 F.3d at 1172 (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)) (emphasis in original).  In addition,

habeas relief is available for evidentiary error only when petitioner demonstrates he has suffered prejudice as a result of a due process violation – that is, that the error had "'a substantial and injurious effect' on the verdict." <u>Dillard v. Roe</u>, 244 F.3d 758, 767 n.7 (9th Cir.) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)), <u>cert. denied</u>, 534 U.S. 905 (2001).

Here, the gang evidence was properly admissible to show petitioner's motive for his two alleged assaults on African-American inmates. <u>See, e.g.</u>, <u>United States v. Abel</u>, 469 U.S. 45, 49 (1984) (gang evidence is admissible as probative of possible bias); <u>United States v. Takahashi</u>, 205 F.3d 1161, 1164 (9th Cir. 2000) (evidence of gang affiliation admissible when relevant to material issue); <u>United States v. Santiago</u>, 46 F.3d 885, 889-90 (9th Cir.) (gang evidence admissible to show motive, opportunity, intent, preparation, or plan, and to show credibility of witnesses who feared gang retaliation) (citation omitted), <u>cert. denied</u>, 515 U.S. 1162 (2005). As there were permissible inferences the jury could draw from the gang evidence that was admitted in petitioner's trial, no constitutional error occurred.

Additionally, petitioner has not shown that the admission of the gang evidence had a substantial and injurious effect on the jury's verdict. If the jury was inflamed by evidence of petitioner's gang membership, one would not expect the jury to have acquitted petitioner of count one which charged the assault of an African-American inmate. (RT 508). Moreover, the evidence was not so prejudicial as to render petitioner's trial fundamentally unfair, given the strength of the evidence tying petitioner to the crimes for which he was convicted. Petitioner admitted to possessing the broken leg shackle (that petitioner broke from his own leg), which was the basis of the charge that petitioner possessed a weapon while in custody (count two). (RT 596-604, 608-09). Petitioner also admitted to fighting with another inmate at the Chino courthouse and that petitioner did not stop fighting when petitioner saw a deputy standing outside the

doorway.  (RT 615-17).  Petitioner assumed the guard was going to mace him so he put his head down or turned his head away and kept fighting.  (RT 617-18). Petitioner did not stop fighting until he was tasered and went to the ground.  (RT 618-23).  Petitioner admitted telling the deputy who tasered him that there would be repercussions for the deputy's acts.  (RT 625).  This testimony, in addition to the deputy's testimony that:  (1) the inmate petitioner was fighting stopped fighting when the deputy said to stop, but petitioner looked at the deputy and then continued to strike the other inmate in the back of his head; and (2) afterward petitioner threatened the deputy (RT 408-13), amply supported the charges that petitioner committed assault by means likely to cause great bodily injury, and threatened an executive officer (counts three and four).  There is little suggestion on this record that the trial court's admission of gang evidence rendered petitioner's trial fundamentally unfair.

For these reasons, based on the Court's *de novo* review, petitioner is not entitled to federal habeas relief on this claim.  Petitioner has not shown that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### 3. Petitioner Has Not Shown That His Counsel Rendered Ineffective Assistance

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to the extent of the gang expert's testimony (Ground Two), and that his appellate counsel was ineffective for failing to raise Ground One on direct appeal (Ground Three).  (2012 Petition Memo at 12-13).

### a. Pertinent Law

The Sixth Amendment guarantees a state criminal defendant the right to effective assistance of counsel at trial.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  To warrant habeas relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both that:  (1) counsel's performance was

deficient; and (2) the deficient performance prejudiced his defense. Id. at 668, 687-93, 697; see also Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (Strickland standards apply to ineffective assistance of appellate counsel claims). As both prongs of the Strickland test must be satisfied in order to establish a constitutional violation, failure to satisfy either prong requires that a petitioner's ineffective assistance of counsel claim be denied. Strickland, 466 U.S. at 697.

Counsel's representation is "deficient" if it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Harrington v. Richter, 562 U.S. 86, 104, 111 (2011). Courts must apply a "strong presumption" that an attorney's performance was within "the wide range of reasonable professional assistance." Richter, 562 U.S. at 104 (citation omitted). A petitioner can overcome the presumption only by showing that, when viewed from counsel's perspective at the time, the challenged errors were so egregious that counsel's representation "amounted to incompetence under 'prevailing professional norms.'" Id. at 105 (citation omitted).

Deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id.; see also Woodford v. Visciotti, 537 U.S. 19, 22 (2002). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112 (citation omitted).

**b.    Trial Counsel Was Not Ineffective for Failing to Object to the Gang Expert Testimony (Ground Two)**

As summarized above, petitioner's counsel opposed the admission of the gang evidence but the trial court found the gang-related evidence relevant and admissible. (CT 293-97; RT 124-25). Petitioner generally complains that his trial counsel failed to object to the gang testimony, assertedly allowing the gang

22

expert's testimony to go "unchecked and unchallenged." (2012 Petition Memo at 12-13). The record belies petitioner's assertions.

First, petitioner's counsel effectively cross-examined the expert and got the expert to admit that the expert had no personal knowledge about petitioner's alleged gang membership or why the crimes were committed. (RT 550-52).

Second, petitioner's counsel objected several times throughout the course of the expert's testimony. (RT 492, 500-01, 509, 519-20, 553-56, 559). Had counsel further contemporaneously objected to the gang evidence as inadmissible, the trial court would have overruled any objections given the pretrial ruling. Counsel cannot be deemed ineffective for failure to take futile action. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel not ineffective for failing to raise meritless objection), cert. denied, 546 U.S. 1137 (2006); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take futile action can never be deficient performance), cert. denied, 519 U.S. 1142 (1997); Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (failure to raise meritless legal argument does not constitute ineffective assistance of counsel).

Finally, in light of the strength of the evidence implicating petitioner in the crimes for which he was convicted (discussed above) and of the jury's acquittal on count one, petitioner has not shown that, but for counsel's failure to more stringently cross-examine the expert or to object to more of the expert's testimony, the result of trial would have been different.

For these reasons, based on the court's *de novo* review, petitioner has not shown a constitutional violation. 28 U.S.C. § 2254(a).

### c. Appellate Counsel Was Not Ineffective for Failing to Raise Ground One on Direct Appeal (Ground Three)

Petitioner also contends that his appellate counsel was ineffective for failing to raise Ground One on direct appeal. (2012 Petition Memo at 13). Appellate counsel has no constitutional obligation to raise all non-frivolous issues on appeal.

See <u>Pollard v. White</u>, 119 F.3d 1430, 1435 (9th Cir. 1997) (citation omitted). "A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court." <u>Id.</u> (citation omitted). Appellate counsel's failure to raise an issue on direct appeal cannot constitute ineffective assistance when the "appeal would not have provided grounds for reversal." <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001) (citation omitted); <u>see also</u> <u>Rhoades v. Henry</u>, 638 F.3d 1027, 1036-37 (9th Cir.) (en banc) (counsel not ineffective for failing to investigate and raise an argument on appeal where "neither would have gone anywhere"), <u>cert. denied</u>, 565 U.S. 946 (2011).

As set forth above, there is no merit to Ground One. As a result, petitioner cannot show that appellate counsel was deficient in failing to present Ground One on direct appeal, or that the outcome of petitioner's appeal would have been different had counsel done so. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. at 285, 289. Once again, petitioner has not shown a constitutional violation to merit federal habeas relief. 28 U.S.C. § 2254(a).

For all the foregoing reasons, petitioner is not entitled to federal habeas relief on the 2012 Petition.

**B.** **Petitioner Is Entitled to Federal Habeas Relief on His Challenge to the Constitutionality of the 2000 Conviction Used to Enhance His 2008 Sentence (2010 Petition)**

As noted above, the Ninth Circuit found that petitioner could challenge his 2008 Sentence in these proceedings on the ground that the 2000 Conviction used to enhance that sentence was unconstitutionally obtained, provided that he satisfies the procedural prerequisites for obtaining relief under 28 U.S.C. section 2254. <u>See</u> <u>Dubrin</u>, 720 F.3d at 1099.

Petitioner alleges that his 2000 plea was not voluntarily or intelligently made because the trial court, prosecutor, and defense counsel assertedly

24

misadvised petitioner that the criminal threats charge petitioner faced was not a strike offense.  Petitioner believed based on the information he received that he would be pleading *nolo contendere* to a non-strike offense.  Petitioner contends that had he been advised correctly, he would not have pleaded *nolo contendere* to the charge but would have demanded a trial.  Petitioner further contends that his counsel in the 2000 State Case was ineffective for failing to advise petitioner about the fact that his plea would be for a strike offense.  (2010 Petition at 5; 2010 Petition Memo at 3-6).  Petitioner alleges under penalty of perjury that on March 8, 2000, his counsel informed him that the prosecution was offering a plea deal for the criminal threats (Cal. Penal Code § 422) charge, that such a charge was <u>not</u> a strike under California's three-strikes law, and that the passage of Proposition 21 (eff. March 8, 2000) did <u>not</u> affect the charge.  (2010 Petition Memo at 1).  Petitioner further alleges that his counsel promised petitioner that petitioner's concern as to whether Section 422 would be a strikable offense under Proposition 21 would be addressed in court.  (2010 Petition Memo at 1).

A guilty plea must be voluntary, knowing and intelligent to comport with due process.  <u>Brady v. United States</u>, 397 U.S. 742, 747-48 (1970); <u>see also</u> <u>Park v. Raley</u>, 506 U.S. 20, 29 (1992) (a plea satisfies constitutional standards as long as it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant") (citation omitted).[15]  For a guilty plea to be knowing and intelligent, the defendant must understand, among other things, the possible penalty he faces.  <u>Iaea v. Sunn</u>, 800 F.2d 861, 866 (9th Cir. 1986).  Similarly, "[b]efore a court may accept a defendant's guilty plea, the defendant must be advised of the 'range of allowable punishment' that will result from his plea."  <u>Torrey v. Estelle</u>, 842 F.2d 234, 235 (9th Cir.1988) (citation omitted).

---

[15]Although state law may impose additional requirements on plea proceedings, "violations of such rules do not ordinarily render a plea constitutionally infirm." <u>Loftis v. Almager</u>, 704 F.3d 645, 648 (9th Cir. 2012), <u>cert. denied</u>, 134 S. Ct. 107 (2013).

Here, petitioner was advised of the penalty he faced for his charge. (CT 450-51, 464-65). Petitioner does not challenge the sufficiency of that advisement. Petitioner takes issue with the advisements of the prosecutor and the trial court regarding the potential strike consequences of his plea.

Courts are not required to advise criminal defendants of "all the possible collateral consequences" of a plea. Torrey v. Estelle, 842 F.2d at 235; see also United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir. 2000) (while district courts must inform defendants pleading guilty of the direct consequences of their plea they "need not advise defendants of the collateral consequences of their guilty plea"); People v. Crosby, 3 Cal. App. 4th 1352, 1354-55 (1992) (possibility of enhanced punishment in case of a future conviction is a collateral consequence of which a defendant need not be advised in connection with a valid guilty plea). A defendant's ignorance of collateral consequences does not deprive a guilty plea of its voluntary character. United States v. Brownlie, 915 F.2d 527, 528 (1990) ("The possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence based on the instant conviction is not a direct consequence of a guilty plea."); cf., Padilla v. Kentucky, 559 U.S. 356, 373-74 (2009) (holding that counsel must inform client whether guilty plea carries risk of collateral consequence of deportation). Accordingly, as petitioner has conceded (2010 Petition Memo at 5), had the trial court (or the prosecutor) simply failed to advise petitioner about the possibility of his conviction being used as a strike, petitioner's 2000 plea would not be rendered involuntary by his ignorance of the possibility that the conviction could be used as a strike in the future.

In this case, however, we have an affirmative misadvisement about the collateral consequences of petitioner's conviction, which petitioner maintains he relied on to enter his plea, i.e., had petitioner been informed that his conviction could count as a strike, petitioner would not have entered the plea and would have insisted on going to trial because petitioner already had one strike conviction at

the time he entered his 2000 plea.  (2010 Petition Memo at 5; see also Dubrin, 720 F.3d at 1096 (Ninth Circuit observing, "[w]hether Dubrin's criminal threats conviction would count as a strike was an important consideration for him, as he had already suffered one strike for an assault conviction in 1997")).  Petitioner argues that either:  (1) the misadvisement induced his plea, rendering his plea not knowing and voluntary; or (2) the terms of the plea agreement included the understanding that the 2000 Conviction was not and would not be used as a strike, and that those terms should be enforced otherwise his plea agreement has been breached and is invalid.  (2010 Petition Memo at 4-5; Supp. Reply at 9-10; Petitioner's Post-Hearing Brief at 9-34; Petitioner's Post-Hearing Reply at 1-2).

The Court has concluded that petitioner is entitled to federal habeas relief on his breach of contract claim, *i.e.*, his claim that the plea agreement included a term that the 2000 Conviction was not and would not be used as a strike, and that such term must be enforced.  In light of the foregoing, the Court need not and has not addressed petitioner's other challenges in the 2010 Petition to the use of the 2000 Conviction to enhance his sentence in the 2008 State Case, except insofar as to determine that no remedy other than specific performance of the 2000 plea agreement and resentencing in the 2008 State Case would be appropriate.

### 1.    Petitioner Has Exhausted His Breach of Plea Agreement Claim; Review is *De Novo*

Petitioner argues that the plea agreement included the term that the 2000 Conviction was not and would not be used as a strike, and that such term should be enforced otherwise his plea agreement has been breached and is invalid.  (2010 Petition Memo at 1-2; Supp. Reply at 18-20; Petitioner's Post-Hearing Brief at 18-28; Petitioner's Post-Hearing Reply at 5-8).  The parties disagree as to whether such breach of contract claim has been exhausted.  Respondent argues that petitioner did not present this claim to the state courts.  (Respondent's Post-Hearing Brief at 2, 5-13).  Petitioner argues that he directly raised his breach of

contract claim with the California Court of Appeal in the Second State Petition, and that he indirectly raised it with the California Supreme Court in the Third State Petition as part of his misadvisement claim. (Petitioner's Post-Hearing Reply at 2-4 (citing the Second and Third State Petitions)). Petitioner also argues that he raised the claim again as part of the misadvisement claim on direct appeal of the 2008 Conviction, but the California Court of Appeal failed to address the claim in its decision. (Petitioner's Post-Hearing Brief at 9-11).

It appears to the Court that petitioner exhausted the breach of contract claim with the California Supreme Court in the Third State Petition. Although petitioner did not frame a specific "breach of contract" claim like he did in the Second State Petition, petitioner alleged in his Third State Petition:

> As part of the above plea agreement, petitioner made it very clear to appointed counsel, the prosecution, and the court, that he would not accept any plea bargain, of guilt, if, [Penal Code §] 422 would be considered a "strikable offense" under the California three strikes law. . . . ¶ [D]uring the plea bargain hearing, petitioner's counsel, the prosecution and the court all stipulated and informed petitioner that, in fact, [Section] 422 was not a "strikable offense" under the California three strike[s] law. Nor, did prop-measure 21 § 17 affect [Section] 422 by making it a strikable offense. ¶ Thus, the prosecution, the court and petitioner's counsel[] led petitioner into believing that he would be pleading guilty or, nolo contendere to a "non-strikable offense." Under petitioner[']s faith and trust of the court[,] petitioner agreed to enter [a] plea of nolo contendere.

(Attachment to Lodged Doc. B2 at 1). Petitioner explained that he was "misled by counsel, the prosecution, and trial court, as to the true nature of the consequences in plea agreement. . . violating petitioner's due process right to being reasonably informed of the nature of charges and consequences of plea." (Id. at 2). Petitioner

28

requested to withdraw his plea underlying the 2000 Conviction, quoting United States v. Goings, 200 F.3d 539, 544 (8th Cir. 2000) ("Where it is clear that the government violated the terms of a plea bargain, the defendant is typically given the option of withdrawing his guilty plea or demanding specific performance.") (citing, *inter alia*, Santobello v. New York, 404 U.S. 257, 262-63 (1971)). (Attachment to Lodged Doc. B2 at 3). Petitioner's citation to Goings and accompanying argument should have alerted the California Supreme Court to the fact that petitioner's *pro se* Third State Petition was raising a due process challenge based on the government's alleged violation of the plea agreement. Compare Davis v. Silva, 511 F.3d 1005, 1010 (9th Cir. 2008) (where petitioner alleged a due process violation and cited a case, statute, and a regulation, "simply cite checking" the petition would have alerted the state court to the relevant constitutional principle and would have given the state court "all the facts necessary to give application to the constitutional principle").

It does not appear to the Court, however, that petitioner raised the claim again on direct appeal of the 2008 Conviction. (Lodged Doc. 6 at 17-24 (raising only misadvisement claim); Lodged Doc. 9 at 3-11 (same)). As summarized above, the California Supreme Court denied the Third State Petition on an incorrect procedural ground, *i.e.*, that petitioner was not then in custody on the 2000 State Case. (Lodged Doc. B3). It thus appears that no state court has decided the issue on the merits, so the Court has reviewed this claim *de novo*. See, e.g., Cone v. Bell, 556 U.S. at 472; see also Respondent's Post-Hearing Brief at 13 n.19 (conceding that the claim must be reviewed *de novo* if reached); Petitioner's Post-Hearing Reply at 5 (asserting review must be *de novo*).

### 2. Additional Pertinent Facts

It is clear from the record at the close of the plea and sentencing hearing that petitioner's counsel had inquired of the prosecution prior to the plea hearing whether the enactment of Proposition 21 affected the current strike law to make a

terrorist threats conviction a strike. (CT 467-68). Also, prior to the hearing petitioner completed a waiver of rights and plea form acknowledging that he faced a maximum total punishment of 10 years in state prison for the charged offenses. (CT 450-51). Petitioner acknowledged: "That it is absolutely necessary all plea agreements, promises of particular sentences or sentence recommendations be completely disclosed to the court on this form." (CT 450). Petitioner acknowledged that his lawyer had told him that in exchange for the plea he would be getting a sentence of three years and eight months in prison "at 80 percent," with a stay on the California Penal Code section 667.5(A) prior. (CT 451). Petitioner further acknowledged that no one had made any promises "except as set out in this form." (CT 451). Notwithstanding petitioner's counsel's inquiry of the prosecution and petitioner's insistence that he would not have entered the plea had he not been misadvised about the strike consequences of his conviction, there is no mention in the plea form about whether the charge to which petitioner would be pleading guilty was a strike or not a strike. (CT 450-51).

In open court, petitioner stated that he had not been promised anything other than the sentence the court was imposing and that he was entering the plea freely and voluntarily. (CT 462-63). The trial court accepted the plea and sentenced petitioner to the term as agreed in the plea form. (CT 465-67).[16] The trial court asked if there was anything else to advise petitioner "in terms of consequences," and if the plea was "finished," and petitioner's counsel answered, "yes." (CT 467). The court then remanded petitioner to custody to serve his sentence. (Id.).

The prosecutor then spoke up and said "Excuse me, Your Honor. There is one more thing. . . . we're going under the assumption in this plea that this [Cal. Penal Code §] 422 [offense] itself is not a strike." (CT 467-68). The trial court

---

[16]Petitioner does not suggest that he did not receive the benefit of the plea bargain in the form of the agreed upon sentence – the only thing petitioner indicated on the record that he had been promised.

agreed with the prosecution's reading that Proposition 21 did not make a Section 422 offense a strike and noted, "it appears not to be a strike for purposes of any future – of any time in the future in the system, criminal justice" or, if it were a strike, there would be issues of "retroactivity." (CT 468). The prosecutor thanked the trial court and the hearing ended. (CT 468).

The assumption that the offense was not a strike was contrary to the newly-enacted Proposition 21 which made a Section 422 a strike offense.

### 3. Evidence Developed Prior to the Evidentiary Hearing

In a November 2016 declaration, Deputy District Attorney Joseph Esposito stated that he had no independent memory of the proceedings in the 2000 State Case. Esposito reviewed his files concerning the plea discussions and determined there were no records or notes in the files that would shed light on whether consideration of the criminal threats charges as a strike or non-strike was material to petitioner's decision to plead no contest to the charge. (Esposito Decl.).

On November 17, 2016, the parties filed Deputy Public Defender Ruben Garcia's relevant notes from the 2000 State Case, which state as follows:

03-08-00: [Defendant] accepted DA's offer of 3 yrs. 8 mos. at 80%. [Defendant] understood & agreed to waive constitutional rights. [Defendant] understood he would be on parole after he was released. I explicitly explained to [Defendant] that Prop. 21 made a [Penal Code §] 422 charge a strike. I told him that DA did not think it was a strike under Prop. 21 & that he would put that on record. DA Esposito did in fact put this on the record. That way [Defendant] may get some action from DA in striking 422 prior if he picks up a 3rd strike felony. Again, [Defendant] told charge was in fact a strike when we spoke in lockup. [Defendant] still wanted deal. [¶] DA dismissed a strike allegation because it was a juvenile misdemeanor. Thus [Defendant] plead as a second striker. [Defendant's] defense

was essentially to attack [victim's] credibility & lack of sustained fear

for purposes of 422 elements.  [Defendant] still opted to take deal.

See Garcia's Notes (emphasis added).

### 4.    Evidence Adduced at the Evidentiary Hearing

Petitioner testified at the evidentiary hearing that he spoke with Garcia while in a holding tank about the strike consequences of a terrorist threats conviction, when Garcia communicated to him the prosecution's plea offer on the 2000 State Case.  (EHT 8-9).  Petitioner explained that the strike consequences were important to him:

> I had a prior strike already from 1997.  Basically, during this time I
> was incarcerated already, and I kind of had a history of getting in
> altercations with the other inmates, fights, stuff like that, and I know
> those things can lead to another strike.  So pretty much if I took a plea
> and it was a strike, any other strike I got after that, I'd get 25 years to
> life, so it was very important to me.

(EHT 9; see also EHT 12-13 (petitioner again stressing the importance of the strike consequences)).

When asked if Garcia told him the terrorist threats charge was a strike, petitioner answered, "I remember him indicating when I asked him if it was a strike, if it wasn't a strike, misdemeanor or felony, he indicated that he remembered seeing something that potentially made that a strike.  (EHT 9-10; see also EHT 18-19, 27-29 (petitioner stating that Garcia "indicated something that it just became possibly a strike" and that the prosecutor disagreed with Garcia), EHT 29 (petitioner stating whether the charge was a strike was "like a question mark the whole time" to Garcia – Garcia did not say "This is not a strike.")).

When petitioner explained to Garcia that he was not willing to accept anything that was a strike for the charge, Garcia said "he would speak to the district attorney to find out if it is a strike and get his input on basically if it's a

strike or not." (EHT 10, 27). Petitioner returned to the holding tank and 30 to 45 minutes later spoke with Garcia who told him that the DA said the charge was not a strike. (EHT 10, 29, 34; see also EHT 18 (petitioner stating that the prosecutor confirmed it was not a strike)). Petitioner said he told Garcia that he wanted to hear that the charge was not a strike from the prosecutor directly, and Garcia assured petitioner that it would be addressed when they went on record during the plea proceeding. (EHT 11, 28).

Petitioner said that Garcia told him "something to the effect that in the event the DA is wrong on this and they find out later on it is a strike, 'Well, you'll just come back. You'll be able to withdraw your plea' – or come back, or something to that effect." (EHT 11). Petitioner said that during the plea proceedings he noticed that the hearing seemed to be coming to a conclusion and the strike issue had not been addressed as he had been assured it would be, so petitioner nudged Garcia and asked about the strike issue and Garcia spoke to the district attorney who then put the understanding on the record. (EHT 12, 21, 30-31). Petitioner thought the fact that the conviction would not be a strike was a part of his plea agreement. (EHT 12-14). Petitioner said the only reason he accepted the plea was that the offense would not be a strike. (EHT 14, 19, 29).

Petitioner admitted that he was facing a possible 10-year sentence in the 2000 State Case and pleaded to three years and eight months in prison – or approximately a third of the maximum sentence he faced. (EHT 17). Petitioner also admitted that the court form he signed in conjunction with the plea in the 2000 State Case, which purported to set out all promises in exchange for the plea, did not mention whether the offense would qualify as a strike. (EHT 24-27, 29-32; see also CT 450-51 (court form which was also admitted in evidence as Court's Exhibit 100 at EHT 66)). Petitioner had reviewed the plea form with counsel and signed it prior to the plea proceedings. (EHT 32-33; see also CT 461-///

69 (transcript of plea proceedings which was also admitted as Exhibit 1 at EHT 66)).

Ruben Garcia, petitioner's trial counsel in the 2000 State Case, testified that he communicated the prosecution's plea offer to petitioner on or about March 8, 2000. (EHT 39). Garcia did not have an independent recollection of what he told petitioner or of any conversations he had with the prosecutor. (EHT 39, 42, 48, 57-58, 61). Garcia did remember petitioner saying, "I'll take the deal," but had no independent recollection otherwise. (EHT 48).

Garcia reviewed his notes from March 8, 2000 (see Garcia's Notes), and said he had read the notes "a few times" but still did not explicitly remember having a conversation regarding the nuance of the plea. (EHT 40, 46). Garcia said his practice was to talk to clients about the strike consequences of charges prior to a plea. (EHT 40-41, 64). Garcia said it appeared based on his notes that he disagreed with the district attorney about the strike issue and told petitioner the same. (EHT 43-44). Garcia said based on his reading of his notes, "it appears that I was trying to put Mr. Dubrin in the best posture going forward should he reoffend and get charged with another felony." (EHT 45). Garcia also said that it would be his practice to include all the terms of a plea agreement in the court form identified as Court's Exhibit 100 (CT 450-51). (EHT 59).

### 5.    Pertinent Law

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." See Santobello v. New York, 404 U.S. at 262; see also Bordenkircher v. Hayes, 434 U.S. 357, 362 (1978) ("[A] prosecutor's plea-bargaining promise must be kept."); Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (Santobello stands for the proposition that "a criminal defendant has a due process right to enforce the terms of his plea agreement"), cert. denied, 550 U.S. 913 (2007); Johnson v. Lumpkin, 769 F.2d 630, 633 (9th

Cir. 1985).  A defendant's guilty plea "implicates the Constitution," transforming the plea bargain from a "mere executory agreement" into a binding contract. Mabry v. Johnson, 467 U.S. 504, 507-08 (1984).  "Neither party to a binding plea agreement is permitted to renege on that agreement because he may have entered it on the wrong assumptions."  See Cuero v. Cate, 850 F.3d 1019, 1025 (9th Cir. 2017) (denying petition for rehearing and rehearing en banc of Cuero v. Cate, 827 F.3d 879 (9th Cir. 2016)), petn. for cert. filed, No. 16-1468 (U.S. June 6, 2017).

"[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." Rickets v. Adamson, 483 U.S. 1, 5 n.3 (1987); Cuero, 850 F.3d at 1024; Buckley v. Terhune, 441 F.3d at 691.  In California, "[a]ll contracts, whether public or private, are to be interpreted by the same rules. . . ." Cal. Civ. Code § 1635; see also People v. Shelton, 37 Cal. 4th 759, 766-67 (2006); People v. Toscano, 124 Cal. App. 4th 340, 344 (2004) (a plea agreement is interpreted according to the same rule as other contracts) (citing Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003)).  In Buckley, the Ninth Circuit described California's approach to interpreting contracts as a three-step process:

> [1] A court must first look to the plain meaning of the agreement's language.  (Cal. Civ. Code §§ 1638, 1644).  [2] If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."  (Cal. Civ. Code § 1649).  The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee.  Bank of the West v. Superior Court, [2 Cal. 4th 1254, 1265 (1992)]; Badie v. Bank of Am., [67 Cal. App. 4th 779, 802 n.9 (1998)] ("Although the intent of the parties determines the meaning of the contract, the relevant intent is objective – that is, the objective intent as evidenced by the words of

35

the instrument, not a party's subjective intent.") (internal quotation marks and citation omitted)).  Court's look to the "objective manifestations of the parties' intent. . . ." <u>Shelton</u> [37 Cal.4th at 767].  [3] If after this second inquiry the ambiguity remains, "the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist."  (Cal. Civ. Code § 1654; <u>see also</u> <u>Toscano</u>, [124 Cal. App.4th at 345] ("ambiguities [in a plea agreement] are construed in favor of the defendant").

<u>Buckley</u>, 441 F.3d at 695-96.

When an agreement is reduced to writing, "the intention of the parties is to be ascertained from the writing alone, if possible." <u>See</u> Cal. Civ. Code § 1639; <u>compare</u> <u>Davis v. Woodford</u>, 446 F.3d 957, 961 (9th Cir. 2006) (where only evidence parties provided for the terms of a plea agreement was a transcript of plea colloquy, the prosecutor's statements at the plea colloquy became part of the agreement – even if the parties had not negotiated the same prior to the hearing) (citing <u>Brown v. Poole</u>, 337 F.3d at 1157-58, 1160 (where plea agreement was oral and its terms conveyed during a plea colloquy, the intent of the parties was ascertained from an examination of the language of the plea agreement and the conduct of the parties during the plea colloquy) (citing a non-California authority)).

A court may consider the circumstances under which a plea agreement is made to place the court in the position of those whose language the court interprets.  <u>See</u> Cal. Civ. Code § 1647; Cal. Code Civ. Proc. 1860; <u>Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.</u>, 69 Cal. 2d 33, 39-40 (1968) ("rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties") (citations omitted).

///

///

### 6. Analysis

The issues here are whether: (1) the assumption that Proposition 21 did not render petitioner's conviction a strike was a term of the plea agreement; and (2) petitioner in fact relied on the assumption to enter the plea. See Mabry v. Johnson, 467 U.S. at 509-10 (Santobello claim requires the plea to be induced by the prosecutor's promise). The Court has looked to the plain meaning of the plea agreement starting with the written plea form. Buckley, 441 F.3d at 695; Cal. Civ. Code § 1639. The form provides that petitioner was entering a plea in exchange for only the reduced sentence the trial court imposed. (CT 450-51; see also CT 462-63 (petitioner confirming same during plea colloquy)). Petitioner explicitly acknowledged he received no promises except as set forth in the form. (CT 451 ¶ 17). There appears to be no ambiguity on the face of the form.

The parties agree, however, that the plea agreement in this case extended beyond the plea form to the colloquy.[17] Looking at the colloquy, the Court discerns two possible ambiguities: (1) the discussion of petitioner's credit eligibility *before* the trial court accepted the plea; and (2) the prosecution's and trial court's comments about Proposition 21 *after* the trial court accepted the plea.

Although the trial court accepted that the plea was for the sentence imposed, with petitioner's acknowledgment that no other promises had been made (CT 462-66), the colloquy includes the following exchange:

---

[17]The Court asked the parties to advise what constitutes the agreement in this case (*i.e.*, the plea form, the plea form plus the prosecutor's statements, or the plea form plus the prosecutor's statements plus the trial court's comments). (EHT 74). Petitioner argues that the plea agreement extended beyond the plea form and included the prosecutor's and trial court's statements made during the plea colloquy, as evidenced by: (1) the fact that the form provides for entry of a *guilty* plea where petitioner plead *nolo contendere*; and (2) the fact that no prosecutor signed a copy of the form. (EHT 77, 79; Petitioner's Post-Hearing Brief at 21 n.11). Respondent acknowledges that the form and what transpired during the colloquy constituted the agreement, but argues that the comments made after the court accepted the plea were not a part of the agreement. (EHT 83; Respondent's Post-Hearing Brief at 17, 21-23).

1    The Court:  Do you understand that this is an 80 percent case?  It's a
2    strike.  One of the strikes – actually, it's a two-strike case, but one of
3    these – you're going to be pleading to one of these strikes, and the
4    sentence will be 32 [sic] years and 8 months in state prison.
5    [Prosecutor]:  Your Honor, it's actually only one strike.
6    (CT 463).  The prosecutor explained that one of the two convictions alleged in the
7    information was a misdemeanor offense, and the trial court struck that allegation
8    from the pleading.  (CT 464; see also CT 454-56 (information from 2000 State
9    Case with one prior strike allegation stricken through)).  Petitioner admitted the
10   prior conviction allegation and the court accepted the plea.  (CT 465-66).

11        Where a defendant is convicted of a felony and has one or more strike
12   convictions, the defendant can accrue no more than 20 percent sentence credits
13   (which means the defendant must serve at least 80 percent of his sentence).  See
14   Cal. Penal Code §§ 667(c)(5), 1170.12(a)(5).  Whereas, when a current conviction
15   is for a strike offense, a defendant can accrue no more than 15 percent credits.  See
16   Cal. Penal Code § 2933.1 (eff. 1994); see also In re Reeves, 35 Cal. 4th 765, 771,
17   779-81 (2005) (legislative intent behind Section 2933.1 is "to protect the public by
18   delaying the release of prisoners convicted of violent offenses") (citations
19   omitted).  The trial court's and prosecutor's comments suggest that the parties
20   were proceeding under the assumption – prior to the acceptance of the plea – that a
21   Section 422 conviction was not a strike.

22        Petitioner may have assumed that he was not going to be pleading to a
23   current strike because the credit eligibility was not reduced to 15 percent.
24   Petitioner knew at the time he was entering the plea agreement that he had one
25   strike prior from 1997.  (EHT 9; Dubrin, 720 F.3d at 1096 ("Whether Dubrin's
26   criminal threats conviction would count as a strike was an important consideration
27   for him, as he had already suffered one strike for an assault conviction in 1997.")).
28   While petitioner's subjective understanding is not determinative of whether an

objective defendant would have understood that the 80 percent term meant that the current offense was not considered a strike, petitioner's criminal history does support an interpretation that the prosecutor, as promissor, believed that petitioner understood he was not pleading to a strike offense because of the credit eligibility. See Buckley, 441 F.3d at 695; Cal. Civ. Code § 1649. It also supports petitioner's argument that he thought he was pleading to a non-strike offense *before* the trial court accepted the plea.[18]

The prosecutor's statement in response to the trial court's question of whether the plea was finished ratifies the parties' assumption in entering the plea that Section 422 was not a strike. The prosecutor confirmed that the issue of whether the offense was a strike was raised prior to entry of the plea, the prosecution had conferred with others and believed that Proposition 21 did not make the offense a strike, and the parties were going under the assumption in the plea that Section 422 was not a strike. (CT 467-68).

Whether these comments are actually a part of the agreement, or whether they simply informed the agreement, the results are the same. Either the comments were a part of the prosecution's offer, as approved by the court in its concurrence with (or approval of) the parties' assumption, such that a later charge of the Section 422 conviction as a strike prior violated the plea agreement (see Brown v. Poole, 337 F.3d at 1159 (a plea agreement is between the prosecutor and defendant, subject to the court's acceptance of the plea)), or the comments were

---

[18]Indeed, from defense counsel's contemporaneous notes (see Garcia's Notes), which the Court finds credible, and petitioner's own testimony (EHT 9-11, 18, 27-29), it appears that petitioner was told that the prosecution was proceeding under what defense counsel believed to be a mistaken assumption that the criminal threats conviction had not been deemed a strike. Petitioner testified that he asked defense counsel if the offense was a strike, and counsel said he would address the issue with the prosecutor to find out. (EHT 27-28). Petitioner said that defense counsel told him that the prosecutor's position was that the offense was not a strike. (EHT 29). Petitioner said that he was willing to take the plea offer if the offense was not a strike and if the prosecutor stated his position in court. (EHT 28).

the basis upon which an objectively reasonable defendant would have expected that the Section 422 conviction was not made a strike by Proposition 21, and accordingly could not be charged as being a strike absent other statutory authority for deeming Section 422 a strike offense.  Looking at the "objective manifestations of the parties' intent," either the intent was to contract for the Section 422 offense not being a strike, or the ambiguity remains and should inure to petitioner's benefit.  <u>Buckley</u>, 441 F.3d at 695-96; <u>compare</u> <u>Ybarra v. Stainer</u>, 595 Fed. Appx. 713, 714 (9th Cir. Mar. 3, 2015) (where petitioner claimed he bargained for his offense for dissuading a witness being treated as non-strike, a handwritten term "not a strike" on plea agreement was ambiguous because petitioner was charged with more than one offense; however, any ambiguity "dissipate[d]" in light of the history of plea negotiations where there was no evidence the petitioner ever discussed the strike or non-strike status of dissuading a witness with the prosecutor), <u>cert. denied</u>, 136 S. Ct. 186 (2015).

That the prosecutor and the judge were mistaken as to the law when the agreement was made does not deprive petitioner of the ability to enforce the agreement.  <u>See</u> <u>Amin v. Superior Court</u>, 237 Cal. App. 4th 1392, 1405 (Cal. Ct. App. 2015) ("the prevailing view is that 'a prosecutor may not rescind his [or her] end of [a plea] bargain due to unilateral mistake on his [or her] part'") (quoting Herman, <u>Plea Bargaining</u>, § 10.05, p. 194 (1997), and noting a "dearth of cases in California on this issue").  Under California law, a prosecutor is permitted to withdraw a plea offer before the plea is submitted for approval by the court and before a defendant pleads guilty or otherwise detrimentally relies upon the bargain.  <u>People v. Tucker</u>, 2002 WL 31124607, at *2 (Cal. Ct. App. Sept. 26,

*///*

*///*

*///*

*///*

2002) (unpublished decision).[19]  Here, petitioner is entitled to enforce the agreement because the trial court approved the agreement and petitioner pleaded guilty to his detriment.  Compare id. at *2-4 (finding that trial court did not err in denying defendant's motion for specific performance of a plea offer where prosecutor mistakenly offered a one-count agreement when there were two counts; defendant was aware of the prosecutor's mistake at the time he accepted the plea bargain but failed to show he relied on the mistake to his detriment – unlike in the present case, Tucker never indicated that the number of counts was a significant factor in plea negotiations).

　　　For all of the foregoing reasons, based on the Court's de novo review of the record, petitioner has shown he will suffer a due process violation if he is not permitted to enforce the term of his plea agreement that Proposition 21 did not render the 2000 Conviction a strike.  See 28 U.S.C. § 2254(a); Santobello, 404 U.S. at 261-62.

### 7.　　Specific Performance Is the Appropriate Remedy

　　　When a plea agreement has been breached, "California law calls for specific performance 'when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or she considers unsuitable under the circumstances.'"  Cuero, 850 F.3d at 1025 (quoting People v. Mancheno, 32 Cal. 3d 855, 861 (1982)); see also Cuero v. Cate, 827 F.3d at 890 (Ninth Circuit observing it is bound under Buckley to order specific performance where the state has received the benefit it bargained for (a guilty plea and a conviction) and the prosecutor breaches the plea agreement, unless the defendant "elect[s] to rescind the agreement and take his chances from there") (quoting

---

[19]The Court may cite to unpublished California appellate decisions as persuasive authority.  See Employers Ins. of Wassau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.") (citation omitted).

Buckley, 441 F.3d at 699 n.11) (citations omitted); but see Mabry v. Johnson, 467 U.S. at 511 n.11 ("[E]ven if [a defendant's] plea were invalid, [the Supreme Court has] expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as a remedy for such a plea; the Court made it clear that permitting [the defendant] to replead was within the range of constitutionally appropriate remedies.") (citing Santobello, 404 U.S. at 263 ("The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, . . . or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.") (footnote omitted)).

Petitioner requests specific performance. (Petitioner's Post-Hearing Brief at 33). The Court finds that specific performance is appropriate to enforce the promise that petitioner's offense was not made a strike by Proposition 21 (and therefore could not be charged as a strike prior based on having been added to the list of strike offenses under Proposition 21). As noted above, the trial court in the 2008 State Case sentenced petitioner to a third-strike sentence enhanced by the 2000 Conviction as a strike prior, but advised petitioner that he could return for resentencing if the 2000 Conviction was found in error. (RT 838). Having found that the State breached the plea agreement by charging the 2000 Conviction as a strike prior in the 2008 State Case, it appears that the proper remedy is to remand the case to the trial court in the 2008 State Case for resentencing, instructing that the trial court must treat the 2000 Conviction as if Proposition 21 had not added California Penal Code section 422 to the list of "serious felonies" under California Penal Code section 1192.7(c).

///

///

## VI.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order:  (1) approving and accepting this Report and Recommendation; (2) denying the 2012 Petition and rejecting petitioner's challenges to the 2008 Conviction; (3) granting the 2010 Petition to the extent it requests specific performance of the 2000 State Case plea agreement term – that the 2000 Conviction would not qualify, or be used as a strike by virtue of Proposition 21 – and remanding to the San Bernardino County Superior Court to resentence petitioner accordingly in the 2008 State Case; and (4) directing that Judgment be entered accordingly.

DATED:  August 8, 2017

_____ /s/ _____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE